**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARTIN STILLUFSEN,           :
                           : CIVIL ACTION NO. 03-2355 (MLC)
     Plaintiff,         :
                           :
     v.                  : **MEMORANDUM OPINION**
                           :
DONALD L. EVANS, et al.,    :
                           :
     Defendants.       :
                           :

**COOPER, District Judge**

This matter is before the Court on the motion for summary judgment, pursuant to Federal Rule of Civil Procedure ("Rule") 56, by plaintiff, Martin Stillufsen.  The cross motion for summary judgment by defendants, Donald L. Evans, Conrad C. Lautenbacher, Jr., William T. Hogarth, and Christopher Musto, is also before the Court.  The Court, for the reasons stated herein, will deny the motion and grant the cross motion.

**BACKGROUND**

**I.   Magnuson Stevens Fishery Conservation and Management Act**

The Magnuson Stevens Fishery Conservation and Management Act ("the Act"), 16 U.S.C. § ("Section") 1801, et seq., provides a statutory framework for the conservation and management of the nation's marine fishery resources.  See 16 U.S.C. § 1801(b)(1). The Act establishes Regional Fishery Management Councils charged with the responsibility of developing fishery management plans ("FMPs") in order to conserve fishery resources and prevent

overfishing.  See id. § 1801(b)(5); id. § 1853(a)(1)(A).  FMPs must

> contain [,inter alia,] a description of the fishery,
> including but not limited to, the number of vessels
> involved, the type and quantity of fishing gear used,
> the species of fish involved and their location, the
> cost likely to be incurred in management, and potential
> revenues from the fishery.

Id. § 1853(a)(2).  Reporting requirements were established as a means of collecting this statistical data.  See 50 C.F.R. § 648.7.

50 C.F.R. § 648.7(a)(1)(I) requires permitted dealers to submit reports ("dealer reports") to the National Marine Fisheries Services ("NMFS") providing, inter alia, the purchase dates, the pounds purchased per species of fish, and the price paid by the dealer for certain species of fish ("the reporting requirements").

50 C.F.R. § 648.2 defines a dealer as "any person who receives, for a commercial purpose (other than solely for transport to land), from the owner or operator of a vessel issued a valid permit under this part, any species of fish, the harvest of which is managed by this part."

50 C.F.R. § 648.6 requires:

> All dealers of NE multispecies, monkfish, skates,
> Atlantic herring, Atlantic sea scallop, Atlantic deep-
> sea red crab, spiny dogfish, summer flounder, Atlantic
> surf clam, ocean quahog, Atlantic mackerel, squid,
> butterfish, scup, bluefish, tilefish, and black sea
> bass; Atlantic surf clam and ocean quahog processors;
> and Atlantic herring processors or dealers, as
> described in § 648.2; must have been issued under this
> section, and have in their possession, a valid permit

2

or permits for these species.

To obtain a permit a dealer must submit a complete application to the Regional Administrator.  50 C.F.R. § 648.6(e). 50 C.F.R. § 648.6 provides in pertinent part:

> (e) Issuance. Except as provided in subpart D of 15 CFR part 904, the Regional Administrator will issue a permit at any time during the fishing year to an applicant, unless the applicant fails to submit a completed application. An application is complete when all requested forms, information, and documentation have been received and the applicant has submitted all applicable reports specified in § 648.7 during the 12 months immediately preceding the application. Upon receipt of an incomplete or improperly executed application, the Regional Administrator will notify the applicant of the deficiency in the application. If the applicant fails to correct the deficiency within 30 days following the date of notification, the application will be considered abandoned.
>
> . . .
>
> (g) Duration. A permit is valid until it is revoked, suspended, or modified under 15 CFR part 904, or otherwise expires, or ownership changes, or the applicant has failed to report any change in the information on the permit application to the Regional Administrator as required by paragraph (j) of this section.
>
> . . .
>
> (I) Transfer. Permits issued under this part are not transferable or assignable. A permit is valid only for the person to whom, or other business entity to which, it is issued.

Dealers must re-apply for permits on a yearly basis.  (7-27-05 Oral Arg; see 50 C.F.R. § 648.6.)  Permits are issued in the beginning of the fishing season and are valid until the end of that calendar year.  (Admin Rec. ("A.R."), Vol. II, Ex. 33, 11-

3

27-01 Tr. ALJ Hearing ("Tr. ALJ Hearing"), at 25.)

It is unlawful for any person to violate any provision of the Act or any regulation issued under the Act.  16 U.S.C. § 1857(1)(A).  Dealers are prohibited from "fail[ing] to comply in an accurate and timely fashion with the log report, reporting, record retention inspection, and other requirements of § 648.7, or submit or maintain false information in records and reports required to be kept or filed under § 648.7."  50 C.F.R. § 648.14.

Any person who is found by the Secretary of Commerce, after notice and an opportunity for a hearing, to have committed a prohibited act, may be assessed a civil penalty not to exceed $100,000 for each violation.  16 U.S.C. § 1858(a).  The Secretary may sanction a dealer by revoking, suspending, or denying a permit ("permit sanctions") where the dealer, who has a permit or has applied for one, has violated Section 1857 of the Act.  16 U.S.C. § 1858(g)(1).  The Secretary, in imposing permit sanctions, must take into account: (a) "the nature, circumstances, extent, and gravity of the prohibited acts for which the sanction is imposed;" and (b) the violator's "degree of culpability, any history of prior offenses, and such other matters as justice may require."  16 U.S.C. § 1858(g)(2).  Permit sanctions may not be imposed "unless there has been a prior opportunity for a hearing on the facts underlying the violation for which the sanction is imposed, either in conjunction with a

civil penalty proceeding under this section or otherwise."
16 U.S.C. § 1858(g)(5).

A person who is assessed a civil penalty, or against whom a
permit sanction has been imposed, by order of the Secretary, may
obtain review of the order in a United States District Court by
filing a complaint within 30 days from the date of the order.
16 U.S.C. § 1858(b).

## II.  __Facts__

Plaintiff is a commercial fish dealer who owned and operated
Red's Lobster Dock and Lobster Pot Restaurant in Point Pleasant,
New Jersey, from at least 1994 to 2001. (A.R., Vol. I, Ex. 27,
Supp. to Initial Decision, Att. A., at 4.)  Plaintiff's business
is not operational at this time. (7-27-05 Oral Arg.)  Plaintiff's
business, Red's Lobster Dock, as a commercial fish dealer, had
been issued fish and lobster permits pursuant to the Act. (Def.
Facts at 1; <u>see</u> Pl. Obj. Def. Facts at 1.)

Plaintiff, beginning in 1994, had a history of failing to
comply with the Act's reporting requirements; in particular
plaintiff repeatedly failed to submit complete dealer reports
including the price paid per species and the date of purchase.
(A.R., Vol. I, Ex. 19, ALJ Initial Decision ("ALJ Initial
Decision"), at 6-8.)  Government agents, prior to 2000,
repeatedly advised plaintiff, both in person and in writing to
file complete dealer reports and warned him that his failure to

5

comply with the reporting requirements could have serious consequences, including civil monetary penalties.  (See id.; Tr. ALJ Hearing, Doyle Test., at 185-86; Id., Steady Test., at 210-16; A.R. Vol. III, Exs. 5, 23-26, Agency Letters.)  Plaintiff, however, repeatedly refused to comply with the reporting procedures because he contended that (1) the requirement of reporting dates of purchases was burdensome, and (2) the required report of the price he paid for fish by species was not confidential and therefore put him at a competitive disadvantage. (Tr. ALJ Hearing, Stillufsen Opening Statement, at 29-30; Id., Stillfusen Test., at 150-52, 170-72; Id., Doyle Test., at 186; Id., Steady Test., at 210-16; A.R., Vol. III, Ex. 27, 6-15-95 Stillufsen Letter; ALJ Initial Decision, at 11, 14.)

This matter specifically relates to plaintiff's noncompliance with the reporting requirements between April 10, 2000 and October 4, 2000.  (ALJ Initial Decision, at 5-6.) Plaintiff, during that time, had federal dealer permits for lobster and fish, in particular Atlantic tunas, black sea bass, monkfish, and spiny dog fisheries.  (Id. at 5.)  Plaintiff also had a federally issued permit for the bluefish fishery from August 2, 2000 through October 4, 2000.  (Id.)  Plaintiff submitted 20 dealer reports without including the dates of purchase or prices he paid for each species of fish during this time period.  (Id. at 5, 11.)  These incomplete dealer reports were

submitted on or about April 10, May 5, June 1, July 12, August 7, September 11, and October 4, 2000 (the "seven counts").  (<u>Id.</u>)

Plaintiff also alleges that Special Agent Christopher Musto of the NMFS approached him on November 8, 2000 and verbally told him that his permits for lobster and fish were being "pulled" because of his failure to comply with the reporting requirements. (Compl., at 3.)  On December 5, 2000, plaintiff applied for his permits to be re-issued for 2001.  (<u>Id.</u>)  Plaintiff was re-issued a dealer's permit for lobster orally for 2001.  (<u>Id.</u>)  Plaintiff, however, was not re-issued a dealer permit for fisheries for 2001.  (<u>Id.</u>)  Plaintiff was orally informed by NMFS employee, Ted Hawes, that his 2001 fish permit application had not been re-issued because he had failed to submit complete dealer reports for 2000.  (ALJ Hearing, Steady Test., at 218-19; A.R., Vol. III, Ex. 28, 12-19-00 Hawes Email; <u>see</u> 7-27-05 Oral. Arg.)  Plaintiff re-applied for, and was issued, a lobster permit for 2002 and 2003.  (Compl., at 3.)  He did not re-apply for any other fish permits after December 2000 because he was "under the belief that his application would be again denied."  (<u>Id.</u> at 4.)

The National Oceanic and Atmospheric Administration ("the Agency") issued a notice of violation and assessment ("NOVA") to plaintiff on May 11, 2001 ("the May NOVA") based on seven counts of "unlawfully failing to comply in an accurate and timely fashion with the reporting requirements of 50 C.F.R. 7."  (A.R.,

Vol. I., Ex. 1, 5-11-01 NOVA.)  The seven counts were based on
the incomplete monthly reports submitted between April 10 and
October 4, 2000.  (Id.)  The May NOVA stated that the Agency had
concluded that plaintiff had violated the Act as to each count
and as a result, plaintiff was assessed a civil penalty of
$70,000, a $10,000 fine for each count.  (Id.)  That same date
plaintiff was also issued a notice of permit sanction ("NOPS")
for the same violations, advising him that his dealer permit
would be suspended for ten months.  (Id., Ex. 2, 5-11-01 NOPS.)
The NOVA and NOPS advised plaintiff of his right to contest the
violations charged and the civil penalty and suspension before an
administrative law judge ("ALJ"), so long as he exercised that
right within 30 days of receiving the notices.  (Id.; Id., Ex. 1,
5-11-01 NOVA.)

The Agency issued plaintiff a modified NOVA on June 27, 2001
(the "June NOVA"), lowering the civil penalty to $5,000 for each
count and amending the permit suspension to seven months.  (Id.,
Ex. 3, June NOVA.)  Plaintiff, in a letter dated July 18, 2001,
requested a hearing before an ALJ and asked that it be convened
in the last two weeks of November, since that is when he would
"have free time to address this issue."  (Id., Ex. 4, 7-18-01
Stillufsen Letter.)  Plaintiff, in that letter, offered to accept
a termination of his fish permits to settle the matter.  (Id.)
The Agency issued a second amended NOVA on September 1, 2001

("the September NOVA"), which reduced the civil penalty to
$20,000.  (Id., Ex. 9, September NOVA.)  Plaintiff submitted a
preliminary position on issues and procedures to the ALJ on
September 19, 2001.  (Id., Ex. 10, Stillufsen Position.)
Plaintiff argued he had complied with the Act because the
reporting requirements were not to be required and strictly
enforced until November 13, 2000.  (Id. (citing 8-22-00 and 11-
13-00 Agency letters to fish dealers).)  Plaintiff also asserted
that the assessment of a civil penalty was arbitrary and capricious
because, at most, he committed technical violations.  (Id.)

A hearing was held before an ALJ on November 27, 2001 ("the
ALJ hearing").  (ALJ Initial Decision, at 4.)  The ALJ heard from
Agency witnesses: Christopher Musto, NMFS Special Agent, Eugene
Steady, NMFS Mid-Atlantic Supervisor for Port Agents, and Scott
Doyle, NMFS Special Agent.  (Id.)  Plaintiff, who appeared pro se,
testified himself but did not present any other witnesses. (Id.)

The ALJ issued its initial decision on March 20, 2002.  (Id.
at 17.)  The ALJ found that "there is no doubt that the date of
purchase and the applicable pricing information has not been
provided.  Indeed, [plaintiff] stipulated to that fact at the
hearing."  (Id. at 12.)  The ALJ concluded that the Agency
"proved by a preponderance of the evidence that [plaintiff], a
federally permitted fish dealer, violated the reporting
requirements imposed on such dealers as specified in Counts 1

9

through 7" of the NOVA and NOPS.  (Id. at 16.)  The ALJ ordered
that plaintiff be assessed a $20,000 civil penalty and that his
fish permit be suspended for seven months.  (Id.)

Plaintiff filed a petition for reconsideration and petition
for review on April 16, 2002.  (A.R., Vol. I, Ex. 20,
Reconsideration Petition.)  The ALJ issued an order of
reconsideration and reopened the case to consider plaintiff's
proposed findings of fact and law on May 13, 2002.  (Id., Ex. 24,
Reconsideration Ord.)  The ALJ, in a supplement to the initial
decision, affirmed and adopted the initial decision on June 27,
2002. (Id., Ex. 27, Supp. to Initial Decision, at 3.)  Plaintiff,
pursuant to 15 C.F.R. § 904.273, filed a petition for discretionary
review of the ALJ's decisions, on July 17, 2002, on the grounds
that (1) the ALJ inappropriately exercised discretion in levying
a civil penalty and (2) the ALJ's decisions involved a substantial
and important question of policy.  (Id., Ex. 30, Review Pet.)
Agency administrator, Vice Admiral Conrad C. Lautenbacher, Jr.,
issued an order denying discretionary review, finding that the
ALJ's decisions "are supported by substantial evidence in the
record, and no error of law occurred." (Id., Ex. 32, 4-17-03 Ord.)

## III. **Procedural History**

Plaintiff filed a complaint in this Court, on May 20, 2003,
alleging that the Agency revoked his fish permit in violation of
the Fifth Amendment of the United States Constitution and appealing

10

the ALJ's assessment of a civil penalty.  (Compl., at 1-2.)  The complaint named the following defendants: (a) Donald L. Evans, Secretary of Commerce, (b) Lautenbacher, Undersecretary of Commerce and Agency Administrator, (c) William T. Hogarth, Assistant Agency Administrator, and (d) Musto.  (Id. at 2.)

Plaintiff alleges procedural due process violations as a result of (a) Musto orally revoking his fish permit in November 2000 and (b) the Agency denying him fish permits for 2001.  (Id. at 2-5.)  Plaintiff seeks review of the ALJ's decisions on the grounds that (a) the ALJ's findings and the civil penalty are not supported by substantial evidence and (b) the civil penalty assessed by the ALJ is excessive and arbitrary and capricious. (Id. at 9-10.)  Plaintiff also argues that defendants should be equitably estopped from assessing a civil penalty because defendants knew of plaintiff's failure to comply with the reporting requirements and yet failed to enforce the Act, thereby "effectively permitt[ing] plaintiff's reporting practice."  (Id. at 8-10.)

Plaintiff moved for summary judgment on March 7, 2005. Defendants cross-moved for summary judgment on March 8, 2005.

## DISCUSSION

I.    **Standard of Review**

Rule 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial.  Id. at 324.  The Court, in deciding a motion for summary judgment, must view the evidence in the light most favorable to the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"By its very terms, the standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (italics omitted).  Material facts are only those facts that might affect the outcome of the action

under governing law.  Id. at 248.  Our role at the summary judgment stage is not to weigh the evidence, but to determine whether there is a genuine issue for trial.  Id. at 249. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citation omitted).

The Act incorporates the standard of review associated with the Administration Procedure Act ("APA"), 5 U.S.C. §§ 701-06. See 16 U.S.C. § 1858(b); N. Wind, Inc. v. Daley, 200 F.3d 13, 17 (1st Cir. 1999).  Judicial review of agency action is generally limited to review of the record on which the administrative decision was based.  Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971).  "Agency action," as used in the APA, "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).  The APA's standard of review is narrow and presumes the agency action is valid, Ethyl Corp. v. EPA, 541 F.2d 1, 34 (D.C. Cir. 1976), but does not shield agency action from a "thorough, probing, in-depth review." Citizens, 401 U.S. at 415.  The APA does not give a court power "to substitute its judgment for that of the agency," but does allow the court to "consider whether the decision was based on a

consideration of the relevant factors and whether there has been a clear error of judgment." Id. at 416.

The Court, pursuant to the APA, reviews the ALJ's determinations of law de novo. See 5 U.S.C. § 706 (stating "the reviewing court shall decide all relevant questions of law"). We, however, must afford "substantial deference to an agency's interpretation of its own regulations." Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994). The Court, when reviewing agency action under the APA, must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A decision is "arbitrary and capricious" within the meaning of the APA if the agency (1) has relied on factors that Congress has not intended it to consider, (2) entirely failed to consider an important aspect of the problem, or (3) offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983).

The Agency's findings of fact underlying the civil penalty and permit sanction imposed will not be set aside unless they are found to be unsupported by the evidence. See 16 U.S.C. § 1858(b) (district court to apply substantial evidence standard of APA);

14

Lovgren v. Byrne, 787 F.2d 857, 861-62 (3d Cir. 1986)
(appropriate standard of review of ALJ's findings relating to
alleged violations of regulations issued pursuant to the Act is
whether such findings are supported by substantial evidence);
Diehl v. Franklin, 826 F.Supp. 874, 878 (D.N.J. 1993) ("The Court
exercises plenary review of questions of law, but it will not
overturn findings of fact if there is substantial evidence in the
record, considered as a whole, to support them.").  "Substantial
evidence is more than a mere scintilla.  It means such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion." Citizens Publ'g & Printing Co. v. NLRB, 263 F.3d
224, 232 (3d Cir. 2001).

## II.  **ALJ Decisions**

### A.  ALJ's Findings as to Plaintiff's Violations of the Act

Count Six of the complaint in this action ("Count Six")
asserts that the ALJ's findings of fact and law, as stated in
both the ALJ's initial decision and supplement to the initial
decision, are not supported by substantial evidence.  (Compl., at
5-6, 10.)  Defendants argue that summary judgment in their favor
is appropriate because the ALJ's findings, that plaintiff did not
comply with the reporting requirements, are supported by
substantial evidence.

The ALJ considered testimony from three Agency witnesses and
the plaintiff.  We find that the ALJ, after considering the

testimony and evidence in the record, appropriately found that the evidence supported a finding that plaintiff had failed to submit accurate and complete dealer reports between April 10 and October 4, 2000.  The ALJ appropriately noted that plaintiff "acknowledge[d] that the reports involved are incomplete, that there is no pricing data, and that the reports show the month involved but not the specific date."  (ALJ Initial Decision, at 11 (citing Tr. ALJ Hearing at 66, 67-69).)  The ALJ also recognized that plaintiff had "been the focus of numerous attempts by various Agency personnel to bring him into compliance.  These efforts date back at least five years and include what appears now to be 10-15 meetings, a written warning, a verbal warning, and at least five letters bringing this problem to his attention."  (Id. at 15.)

The ALJ considered plaintiff's reasons why he did not comply with the reporting requirements and found that each of the reasons did not justify noncompliance.  The ALJ, as to the claim that pricing information is not confidential and disclosure of the information would put plaintiff at a competitive disadvantage, found that plaintiff's "concern regarding the lack of confidentiality of his dealer reports is not supported by the law or the Agency's treatment of the materials.  This concern does not provide justification for failing to file complete reports as required by the Agency's regulations."  (Id. at 14.)

The ALJ also considered plaintiff's contention that the reporting requirements are unimportant, stating: "Clearly, there are valid reasons for requiring pricing and date information on dealer reports. [Plaintiff's] personal dislike of the reports must give way to the greater national interests fostered by the regulations.  There is no justification on this record for the failure to comply with these rules."  (Id. at 15.)  The Court finds that the ALJ's conclusion that plaintiff violated the reporting requirements as specified in counts one through seven of the NOVA and NOPS is supported by substantial evidence.

Plaintiff alleges that summary judgment in his favor is appropriate as to Count Six because the ALJ (1) gave improper weight to hearsay evidence; and (2) was not impartial and lacked an appearance of fairness because the ALJ (a) asked inadequate and imprecise hypothetical questions and (b) failed to consider plaintiff's proposed findings of fact and law and reply brief in preparing the initial decision.  (Pl. Br. at 22-29.)  Plaintiff also alleges that "[t]he agency's sudden change in direction as to plaintiff's reporting habits was arbitrary, capricious, and an abuse of discretion that must be overturned."  (Id. at 19.)  We have considered these contentions and find each of them to be without merit.[1]

---

[1]  We reject plaintiff's contention that the ALJ improperly admitted and considered hearsay evidence.  (See Pl. Br. at 22-26, 29.)  Hearsay evidence is admissible in an ALJ hearing under the

We are satisfied based on our intensive review of this matter that there is no question that plaintiff received a fair hearing and that the ALJ's findings that plaintiff violated the Act were based upon substantial evidence, were not arbitrary or capricious, and were not an abuse of discretion.  We, therefore, will grant summary judgment in defendants' favor as to Count Six of the complaint.

B.   ALJ's Findings as to $20,000 Penalty and Suspension

Counts Two, Three, and Four of the complaint allege that the civil penalty and permit suspension assessed by the ALJ were (1)

---

APA.  5 U.S.C. § 556(d) ("Any oral or documentary evidence may be received, but the agency as a matter of policy shall provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence."); Richardson v. Perales, 402 U.S. 389, 410 (1971) (hearsay evidence is admissible up to the point of relevancy under Section 556 of the APA).

We also reject plaintiff's contention that the ALJ improperly posed hypothetical or imprecise questions to Agency witnesses.  (See Pl. Br. at 29-30.)  The ALJ, in the questions to which plaintiff refers, properly posed direct questions aimed at probing particular issues to aid the ALJ in understanding the matter.  (See id. (citing Tr. ALJ Hearing, at 76-78, 172-79).)

We reject plaintiff's contention that the ALJ's failure to consider plaintiff's proposed findings of fact and law and reply brief in writing the initial decision demonstrates a lack of appearance of fairness.  (See id. at 29.)  Assuming arguendo that the ALJ failed to consider these documents when writing the initial decision, the ALJ expressly considered these documents in the supplement to the initial decision and affirmed and adopted the initial decision.  Plaintiff, therefore, was not prejudiced by this alleged failure.  Nor does this allege failure raise a doubt as to the fairness of the ALJ hearing.

We last reject plaintiff's contention that the Agency's enforcement of the reporting requirements in 2000 after failing to penalize plaintiff for several years is arbitrary and capricious conduct and constitutes an abuse of discretion.  (See id. at 19.)  See infra IV.

18

unsupported by substantial evidence; (2) excessive given the nature and circumstances of the acts alleged in violation of the Act; and (3) arbitrary and capricious because the ALJ failed to consider plaintiff's ability to pay the penalty.  (Compl., at 9-10.)  Defendants move for summary judgment as to these counts on the grounds that the penalty imposed is supported by substantial evidence and is not excessive or arbitrary.  (Def. Br. at 11-14; Def. Reply Br. at 3-7.)

The Court, in reviewing the penalty imposed upon plaintiff, applies an abuse of discretion standard.  See Lovgren, 787 F.2d at 867 (finding that ALJ did not abuse his discretion by imposing a $50,000 penalty against a dock operator for violations of the Act where penalty was greater than Agency sought); Diehl, 826 F.Supp. at 880 (finding that $10,000 penalty assessed against fisherman for violations of the Act was arbitrary and capricious because ALJ failed to consider fisherman's ability to pay as required by then existing version of Section 1858(a) of the Act).  "Under this standard, the amount of the penalty will not be disturbed unless there is a definite and firm conviction that the ALJ committed a clear error of judgment in the conclusion he reached upon weighing of the relevant factors."  Diehl, 862 F.Supp. at 880 (citing Ferrero U.S.A., Inc. V. Ozak Trading, Inc., 952 F.2d 44, 48 (3d Cir. 1991)) (quotations omitted).

The Act authorizes the ALJ to impose a civil penalty up to $100,000 for each violation.  16 U.S.C. § 1858(a).  The Act also provides that in determining the amount of a penalty, the ALJ "shall take into account — (A) the nature, circumstances, extent, and gravity of the prohibited acts for which the sanction is imposed; and (B) with respect to the violator, the degree of culpability, any history of prior offenses, and such other maters as justice may require."  16 U.S.C. § 1858(g)(2).  The Act does not require the ALJ to consider a violator's ability to pay. (See Pl. Br. at 11-12 (acknowledging that the Act was amended so that the ALJ must no longer consider this factor).) __

The record demonstrates that the ALJ appropriately considered and applied the factors expressed in Section 1858 of the Act.  The ALJ, in the initial decision, recognized that the plaintiff's "ability to pay the assessed penalty is not at issue in this matter."  (ALJ Initial Decision, at 9.)  The ALJ went on to find that "[t]he civil penalty assessed in this action is appropriate given the nature, circumstances, gravity, and extent of this violation, the [plaintiff's] culpability, and [his] prior enforcement history."  (Id.)  The ALJ further recognized that in light of the "clear evidence of [plaintiff's] failure to comply with the dealer reporting requirements, the number of instances involved, his history of non-compliance, and his treatment of Agency personnel. . . the amount of the penalty assessed and the

20

permit suspension sought are appropriate."  (Id. at 15-16.)

The ALJ, in the supplement to the initial decision, affirmed the initial decision and stated:

> Repeatedly, [plaintiff] was afforded the opportunity to correct his unlawful behavior but he steadfastly refused.  He has had the ability to avoid the more draconian effects of this civil penalty and suspension but he decided not to comply with the law.  The imposition of the $20,000 penalty and the seven-month suspension of his dealer permit are well founded in this case.

(Supp. Initial Decision, at 2.)

The Courts finds that the ALJ did not abuse his discretion in assessing a $20,000 penalty and permit suspension against plaintiff.  The record demonstrates that the ALJ appropriately assessed each of the factors expressed in Section 1858(b) of the Act.  There is substantial evidence in the record that plaintiff knew that his noncompliance with the reporting requirements was illegal, ignored repeated requests and warnings from the Agency to comply with the requirements or else face potential penalties, and yet chose to ignore those warnings because he believed that the reporting requirements injured his competitive advantage and were burdensome and unimportant.  We agree with the ALJ that the penalty assessed against plaintiff, in light of the record, is appropriate.

We reject plaintiff's contention that the penalty imposed is excessive and arbitrary and capricious because the ALJ failed to consider his ability to pay the penalty.  (See Pl. Br. at 10, 27-

21

28.)[2]  16 U.S.C. § 1858(a) provides in pertinent part: "[T]he
Secretary may also consider any information provided by the
violator relating to the ability of the violator to pay,
[p]rovided, [t]hat information is served on the Secretary at
least 30 days prior to an administrative hearing." (emphasis
added).  The ALJ, under this provision, assuming arguendo that he
did not consider plaintiff's ability to pay, was not required to
consider this evidence under the Act.

Plaintiff erroneously contends that he "raised his inability
to pay the proposed fine . . . in writing prior to the hearing in
the Respondent's Proposed Findings of Fact." (Pl. Reply Br. at
15.)  Plaintiff's proposed findings of fact are dated February 1,
2002, approximately 2 months after the ALJ hearing.  (A.R., Vol.
1, Ex. 18, Pl.'s Proposed Findings.)  Plaintiff, assuming
arguendo that the ALJ should have considered plaintiff's ability
to pay under the Act, thus did not comply with Section 1858 of
the Act because he failed to raise the issue of his inability to

---

[2]  We also reject plaintiff's assertion that we should
consider evidence relating to plaintiff's ability to pay not
included in the record.  See Citizens, 401 U.S. at 420 (judicial
review of agency action is limited to review of record).  We do
not consider such evidence necessary for purposes of analyzing
plaintiff's argument because the record is complete and the ALJ
did not improperly exclude information relevant to plaintiff's
ability to pay.  See Higgins v. Kelly, 574 F.2d 789, 792 (3d Cir.
1978) (finding that evidence wrongfully excluded from
administrative proceedings should be considered by district court
because "[a]bsent a complete record, the reviewing court is
incapable of complying with" the APA).

22

pay in writing prior to the ALJ hearing.[3]

We also reject plaintiff's contention that the ALJ failed to permit him to develop his inability-to-pay application.  (See Pl. Reply Br. at 16.)  The record demonstrates that plaintiff testified at the ALJ hearing about his financial difficulties and

---

[3] Plaintiff asserts that the Agency failed to comply with 50 C.F.R. § 904.240(b) despite having received written notice from plaintiff in his Proposed Findings of Fact and Law.  (Pl. Reply Br. at 15.)  Plaintiff, however, admits that the Agency did not receive notice until after the ALJ hearing.  (Id.)

50 C.F.R. § 904.240(b), which pertains to discovery in ALJ hearings, provides in pertinent part: "With respect to information regarding a respondent's ability to pay an assessed penalty, the Agency may serve any discovery request . . . directly upon the respondent without first seeking an order from the Judge."  (emphasis added)

Plaintiff's arguments relating to the Agency's alleged duty to comply with 15 C.F.R. § 904.240(b) are flawed because plaintiff did not give the Agency written notice prior to the ALJ hearing.  Plaintiff, rather, gave the Agency notice of his alleged inability to pay after he moved for reconsideration. That written notice merely consisted of general allegations relating to the state of plaintiff's business:

    3.   [Plaintiff's] business is seasonal (March-October).
    4.   [Plaintiff's] business has one full time employee.
    5.   Over 90% of [plaintiff's] purchases from federally licensed fishing vessels are lobsters.
    6.   Therefore, a suspension or termination of [plaintiff's] federal lobster permit would effectively put him out of business.

(A.R., Vol. 1, Ex. 18, Pl's Proposed Findings) (citations omitted). Plaintiff did not provide the Agency with written notice specifically relating to his inability to pay the $20,000 fine or the effect that a suspension of his fish permit would have on his business.  The Agency, at that point in the administrative process, was under no obligation to exercise its discretion to conduct discovery as to plaintiff's inability to pay.

Plaintiff's argument, moreover, pertains to the Agency's alleged failure to conduct discovery.  It has no bearing on the ALJ's alleged abuse of discretion.

23

that his business would be irreparably damaged if his lobster permit was suspended.  (See A.R., Vol. II, Tr. ALJ Hearing, at 153, 175-76.)  Plaintiff, however, did not specifically testify that he was unable to pay the $20,000 penalty.  The ALJ considered plaintiff's testimony and found that the $20,000 penalty was appropriate.  (ALJ Initial Decision ,at 15-16.)  The ALJ reconsidered this initial decision, after evaluating plaintiff's proposed findings of fact, and again found that the penalty was appropriate.  (Supp. Initial Decision, at 2-3.)  We, therefore, find that the ALJ considered plaintiff's allegation that he was unable to pay, to the limited extent that plaintiff raised such an issue.

We lastly reject plaintiff's assertion that the penalty is excessive because the ALJ failed to consider the mitigating factor — the Agency "attempted to coddle him over a period of years" and failed to act in a "straightforward" way and suspend his fishing permit when "he initially refused to comply with the reporting requirements."  (Pl. Br. at 10-11.)  The ALJ considered and rejected plaintiff's argument, finding that plaintiff's excuses for noncompliance did not justify his failure to comply with the Act.  (See ALJ Initial Decision, at 11-16; Supp. Initial Decision, at 2-3.)  (See also infra IV.)

The Court, given the discretion vested in the ALJ and the deferential standard of review, finds that the ALJ did not abuse his discretion in imposing upon plaintiff a $20,000 civil penalty

24

and seven-month suspension.  We, accordingly, will grant summary judgment in defendants' favor as to Counts Two, Three, and Four of the complaint.

## III. **Due Process Violations**

### A.   Failure to Re-issue 2001 Fish Permit

Plaintiff alleges in Count One of the complaint that (1) he has a property right in his fish permit, as it is "valid until revoked" under 50 C.F.R. § 648.6(g), and (2) defendants violated his Fifth Amendment due process rights by failing to re-issue his fish permit for 2001 without providing him proper notice of an alleged violation of the Act as required by 15 C.F.R. §§ 904.300(a), 904.302.  (Compl., at 3, 9.)  Defendants move for summary judgment on the grounds that plaintiff has failed to allege a due process violation.  (Def. Br. at 23.)

"A person suffering legal wrong because of agency action, or adversely affected by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  We have jurisdiction to review final agency actions.  5 U.S.C. § 704.  Final agency actions are those actions "for which there is no other adequate remedy in a court."  Id.

50 C.F.R. § 648.6(e) provides that the re-issuance of a dealer permit for an upcoming year is contingent upon a dealer submitting a complete application.  An application is considered complete only if a dealer has submitted complete dealer reports for the previous year.  50 C.F.R. § 648.6(e).  A dealer has 30

days, after he is notified by the Agency that his application is incomplete, to correct the deficiency in the application or else the application is considered abandoned.  <u>Id.</u>

Plaintiff, in the complaint, alleges that he "was not re-issued a permit for Atlantic Tunas, Black Sea Bass, Monkfish, Bluefish, or Spiny Dogfish" for 2001.  (Compl., at 3.)[4] Plaintiff stipulated during the ALJ hearing and in his moving papers that he did not file complete dealer reports from April to October 2000.  (Tr. ALJ Hearing at 66 ("I agree then all the reports are incomplete, there's no pricing indicated at all and the synopsis is done by the month."); Pl. Br. at 25 ("Plaintiff . . . readily admitted that he did not file the dealer fish reports in a complete fashion.").)  Plaintiff was orally informed by a NMFS employee, in December 2000, that his 2001 fish permit had not been re-issued because he had failed to submit complete dealer reports for 2000.  (Tr. ALJ Hearing, Steady Test., at 218-19; A.R., Vol. III, Ex. 28, 12-19-00 Hawes Email.)  This reason for the Agency's failure to re-issue plaintiff's 2001 fish permit was confirmed by the defendants at oral argument.  (<u>See</u> 7-27-05 Oral Arg.)

Plaintiff has alleged no evidence that he attempted to correct these deficiencies so that the application would not

---

[4]  We reject plaintiff's allegation in his moving papers that his 2001 permit was "revoked without notice or a hearing." (Pl. Reply Br. at 5-6.)  Plaintiff's 2001 permit was not revoked, rather, it was not re-issued.  (<u>See</u> Compl., at 3.)

properly be considered abandoned.[5]  Plaintiff, moreover, has not

presented, nor can the Court find, case law holding that the

Agency's act of deeming a permit application to be abandoned

constitutes a reviewable, final agency action.[6]  Plaintiff, thus,

has failed to sufficiently state a claim in count one of the

complaint, to the extent that it relates to the Agency's failure

to re-issue plaintiff's 2001 fish permit.[7]

     The Court, therefore, will grant summary judgment in favor

of defendants as to Count One of the complaint, to the extent

that it relates to plaintiff's due process claim that his 2001

fish permit was not re-issued, dismissing that claim for lack of

---

     [5]  We reject plaintiff's contention that 15 C.F.R. §§
904.300(a) and 904.302 apply here.  These provisions provide for
particular administrative procedures where a dealer permit is
denied due to a dealer's violation of the Act.  15 C.F.R. §§
904.300(a), 904.302.  These provisions do not relate to the
failure of the Agency to re-issue a dealer permit for failure to
submit a completed application, which, according to the
Government, is the reason plaintiff's dealer permit was not re-
issued.  (See 7-27-05 Oral Arg.)

     [6]  Plaintiff has also failed to present evidence that he has
exhausted his administrative remedies or that failure to do so is
excusable.  See Babcock & Wilcox Co. v. Marshall, 610 F.2d 1128,
1135-38 (3d Cir. 1979).

     [7]  Plaintiff argues that summary judgment in defendants'
favor should not be granted because discovery is necessary
because "the action taken by the agency was so inexplicable that
the Court needs more information in order to assess this action"
and "not everything the Agency considered is contained in the
administrative record."  (Pl. Br. at 14.)  We reject this
contention because there is no showing that plaintiff pursued
available administrative remedies to make an administrative
record as to the Agency's failure to re-issue his 2001 fish
permit.

jurisdiction.  We, accordingly, will dismiss Count One of the complaint insofar as it asserts this claim.[8]

   B.   Alleged Oral Revocation of 2000 Permit

   Plaintiff also alleges in Count One of the complaint that defendants violated his due process rights when Musto approached him at his place of business on November 8, 2000 and told him that the Agency "was revoking plaintiff's federal seafood dealer's permit due to [his] failure to fully comply with the reporting procedures under 50 C.F.R. [§] 648.7" without prior notice and before a NOVA was issued.  (Compl., at 3, 9; Pl. Br. at 13.)  Defendants move for summary judgment on the grounds that plaintiff has failed to allege a due process violation. (See Def. Br. at 22-29.)

   The Court, as discussed supra, may only review an Agency action if it is final.  5 U.S.C. § 704.  The Agency may only a revoke a dealer permit if it provides notice in writing of revocation and a hearing by an ALJ on the facts underlying the revocation.  16 U.S.C. § 1858(g); 15 C.F.R. §§ 904.300-304. Plaintiff alleges that his 2000 permit was revoked when Musto

---

   [8]  We find, despite plaintiff's assertions to the contrary, that plaintiff has no due process property right in his fishing permit.  (See Pl. Reply Br. at 5-6.)  See also Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1374 (Fed Cir. 2004), cert. denied, 125 S.Ct. 2963 (2005) (holding that plaintiff did not have property interest in fishery permit ).
   In view of our determination, we do not reach the other substantive arguments (i.e.: immunity) posed in the parties' moving papers.  (See Def. Br. at 28-32; Pl. Reply Br. at 6-10.)

orally told plaintiff that the Agency was "pulling his permits."
(Compl., at 3.)  Oral revocation of a dealer permit, however, does
not constitute official agency action and is insufficient to revoke
a permit.  See 16 U.S.C. § 1858(g); 15 C.F.R. §§ 904.300-304.

Plaintiff, therefore, has not made a sufficient showing of a
due process violation because he has failed to demonstrate that
the Agency took any official, final action to revoke his 2000
permit.  The alleged revocation, because it was not official
agency action, hence, was not reviewed by an ALJ.[9]  The Court,
therefore, finds that we have lack jurisdiction over Count One,
to the extent that it relates to allegations of an oral
revocation of plaintiff's 2000 permit.[10]  We, accordingly, will
grant summary judgment in defendants' favor as to Count One
insofar as it asserts this claim.  We will dismiss Count One, to
the extent that it alleges a due process violation as a result of
an oral revocation of plaintiff's 2000 permit, because plaintiff
can prove no set of facts that would render an oral revocation of
a dealer permit an official, final agency action.

---

[9]  We note that, even though ALJ review was not appropriate
because the Agency had not taken any official action, plaintiff
had an opportunity to raise the issue of the alleged oral
revocation of his 2000 permit at the ALJ hearing but failed to
raise, or question Musto about, the issue.

[10]  We reject plaintiff's request for discovery pertaining to
Musto's alleged revocation of the 2000 permit because we find
that plaintiff has failed to present a due process violation
because oral revocation does not constitute official, final
agency action.  (See Pl. Br. at 13-14.)

IV.   **Estoppel**

Plaintiff alleges in Count Five of the complaint that the defendants "should be equitably estopped from making any assessment of violation and/or penalty as to plaintiff given the defendants' misconduct and plaintiff's detrimental reliance on said misconduct and injury pursuant to 16 U.S.C. § 1858(a)." (Compl., at 10.)  Plaintiff, in particular, contends:

> From 1995 to 2000 the only efforts the Agency undertook with regard to [his] non-compliance were the occasional verbal request that he properly complete his reports.  Then, suddenly in 2000, the Agency issued a NOVA that assessed a whopping $70,000 fine against [him] for seven incomplete reports.
> These facts make out the elements of estoppel. The Agency's oral and written warnings were a misrepresentation of its position on incomplete reporting. [He relied upon these misrepresentations as he continued to submit incomplete reports for five years to his detriment, when the Agency issued a NOVA that assessed a $70,000 fine against him. . . .
> [He] was induced by the Agency into believing that his reports were in compliance with the regulations. The misconduct of the Agency occurred multiple times over six years.  Therefore, the Agency has committed affirmative misconduct and should be estopped in their efforts against [him].

(Pl. Reply Br. at 11-12.)  Defendants move for summary judgment on the grounds that plaintiff has not established a claim of equitable estoppel.  (Def. Br. at 15-18.)

To prove estoppel the party asserting the claim must show: (1) a misrepresentation by another party; (2) which he reasonably relied upon; (3) to his detriment.  United States v. Asmar, 827 F.2d 907, 912 (3d Cir. 1987).  To assert an estoppel claim

against the government the litigant must also prove affirmative misconduct on the part of the government.  Id.

The Court finds that plaintiff has not demonstrated the elements of equitable estoppel against the Agency.  Plaintiff has failed to allege in particularity any misrepresentations or misconduct on the part of the Agency.  We reject plaintiff's contention that the Agency failed to take action against him. While the Agency did not issue plaintiff a formal citation until 2000, the record demonstrates that the Agency, for several years, repeatedly informed plaintiff of, and instructed him to comply with, the reporting requirements.  The Agency also repeatedly warned plaintiff that his failure to comply could result in penalties.  Assuming arguendo that the Agency failed to take action against plaintiff for his noncompliance with the reporting requirements, this inaction does not constitute misrepresentations.  Nor does this inaction, even if prolonged over several years, constitute affirmative misconduct.[11]  The plaintiff has failed to cite, nor can the Court find, any case law to the contrary.

---

[11]  An NMFS agent told plaintiff in September 2000 "just put down anything" on the reports.  (Tr. ALJ Hearing, Musto Test., at 94-95.)  This comment does not constitute a misrepresentation or affirmative misconduct.  See Heckler v. Cmty. Health Servs. of Crawford County, Inc., 467 U.S. 51, 59-61 (1984) (holding that equitable estoppel could not be invoked where government agent gave erroneous advice because plaintiff failed to prove that the government changed its position and that plaintiff relied on government agent's advice).

Plaintiff also cannot show that he detrimentally relied upon the Agency's alleged inaction or misrepresentations.  Plaintiff knew what the reporting requirements were.  The record does not demonstrate that plaintiff was under an impression that he was no longer required to comply with the requirements.  The record, rather, demonstrates that plaintiff simply chose not to comply with the reporting requirements, despite the Agency's continuous requests and warnings, because he thought that the requirements were unimportant.  Plaintiff "ignored these numerous warnings at his own peril."  (Supp. Initial Decision, at 3.)  The Court, because plaintiff has failed to prove a prima facie case of equitable estoppel, will grant summary judgment in defendants' favor as to Count Five of the complaint.

## CONCLUSION

The Court, for the reasons stated supra, will deny plaintiff's motion for summary judgment and grant defendants' cross motion for summary judgment.  An appropriate order and judgment will be issued.


        s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

32